MICHAEL J. RUTENBERG
ATTORNEY AT LAW
620 Christian Street, # 2-A.
Philadelphia, PA 19147-2950
(215) 551-0551/Fax (215) 551-3616
E-mail: mjrutenberg@yahoo.com
<u>Attorney for Plaintiff, Rafail Theokary</u>

| | | |
|---|---|---|
| RAFAIL THEOKARY, | : | U.S. DISTRICT COURT FOR |
| | : | THE EASTERN DISTRICT OF |
| Plaintiff-Appellant, | : | PENNSYLVANIA |
| | : | |
| | : | |
| vs. | : | CASE NO. 10-00058 |
| | : | |
| | : | BKRTCY ADVERSARY NO. 09-00051 |
| ERIC ABBATIELLO, d/b/a | : | |
| ABBATIELLO RACING STABLES, | : | BRIEF ON BEHALF OF APPELLANT |
| TOM SHAY, GAITWAY FARM, INC.; | : | RAFAIL  THEOKARY IN APPEAL OF |
| and SHOWPLACE FARMS, | : | ORDER  ENTERED NOVEMBER , |
| | : | 2009  IN FAVOR OF DEFENDANT |
| | : | GAITWAY FARM, INC |
| Defendants-Appellees. | : | |

---

.

## I. STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction of the instant appeal of the Bankruptcy Court's Judgment entered on November 23, 2009, pursuant to 28 U.S.C. § 158 (a). <u>See</u> <u>also</u> Fed. R. Bankr . P. 8001.

## II. STATEMENT OF THE ISSUES PRESENTED AND THE STANDARD OF APPELLATE REVIEW

### A. STANDARD OF REVIEW

The standard of review applicable to findings of fact by the Bankruptcy Court is that such must be accepted unless they are "clearly erroneous." In re Reid, 757 F.2d 230, 233 (10th Cir. 1985). However, the District Court has plenary review on questions of law. In re Sharon Steel Corp., 871 F.2d 1217, 1222-23 (3d Cir. 1989). Finally, if the District Court finds that the record is inadequate for a meaningful review, it may remand for additional fact finding or an evidentiary hearing. See In re Abbots Dairies of Pa., Inc., 788 F.2d 143, 148-49 (3d Cir. 1986).

### B. ISSUES PRESENTED

1. Whether the Bankruptcy Court erred in failing to issue findings of fact and conclusions of law before entering judgment in favor of Defendant Gaitway Farm, Inc., pursuant to Fed R.. 52(c)?

2. Whether the Bankruptcy Court erred in dismissing Defendant Gaitway Farm, Inc. ,as a party in this matter at the close of Plaintiff's case-in-chief when a stableman's lien sale was advertised and held on the premises of said Defendant some two days following the filing of Plaintiff's Chapter 7 Petition herein and that Defendant was the "keeper of the stable" under state law?

3. Whether the Bankruptcy Court improperly refused to allow Plaintiff to conduct a full cross-examination of Defendant Eric Abbatiello, including

-2-

exploration of the full extent of his relationship with Defendant Gaitway Farm, Inc. in the advertising, posting and convening of the February 18, 2007 stableman's lien sale at Defendant Gaitway Farm's premises?

4.   Whether the above determination of the Bankruptcy Court failed to accord appropriate weight to the Bankruptcy Code's fundamental protection of the "automatic stay" in the specific context of a post-petition lien sale initiated by one party at the premises of another party with whom it has enjoyed a long-standing business relationship?

## III. STATEMENT OF THE CASE, INCLUDING RELEVANT FACTS

Plaintiff filed the instant adversary action with the United States Bankruptcy Court for the Eastern District of Pennsylvania (Bankruptcy Court) on February 20, 2009, seeking compensatory  and punitive damages for the actions of the four defendants, Tom Shay, Eric Abbatiello (d/b/a Abbatiello Racing Stables), Gaitway Farm, Inc., and Showplace Farms and unnamed  John Does for their violations of the "automatic stay," which went into effect by operation of law, pursuant to 11 U.S.C. § 362(a), when Plaintiff filed his Chapter 7 Petition on February 16, 2007 with said Court.  See Docket Entry # 1; Designation of Record # 1.

Defendants filed various pre-trial motions, including inter alia, motions for summary judgment to dismiss both Gaitway Farm, Inc., and Showplace Farms.  The Bankruptcy Court Judge, Honorable Eric L. Frank, denied said motions in each instance.  See, e.g., Docket Entry ## 57, 71, 72, 73, 78   Designation of Record ## 3 -7 inclusive.

A pretrial conference  was held before Judge Frank on September 10, 2009, at which time His Honor, on the record, allowed counsel for Defendants to file another motion to dismiss Defendant Showplace Farms (Showplace) but did **not** grant leave to file a further motion to dismiss Defendant Gaitway Farm, Inc. (Gaitway).  <u>See</u> Transcript of  September 10, 2009 Pretrial Conference. (It is noted that, although transcripts of various portions of the proceedings herein  have been ordered through the Bankruptcy Court and a payment tendered, the transcripts -- other than of Mr. Pocaro's testimony on November 9, 2009 have not yet been received; they are anticipated within the next week, and will be provided to this Court upon receipt.)   A settlement conference was held in chambers following the conclusion of the on-the-record pretrial conference; no settlement was then reached although extensive discussions took place, with counsel for Plaintiff and counsel for Defendants meeting jointly and separately with Judge Frank.  Thereafter, Judge Frank issued a Pretrial Order allowing Gaitway Farm, Inc., as well as Defendant Showplace Farms to file motions to dismiss.   <u>See</u> Docket Entry # 89; Designation of Record # 10.

Counsel for Plaintiff wrote a letter to Judge Frank noting the conflict between the judge's ruling from the bench and his written Order and accordingly requesting *inter alia* modification of the written Order to conform with the on-the-record Pretrial Conference  and/or a telephone conference to discuss same. Docket # 93; Designation of Record  # 11.  Judge Frank issued an Order on September 25, 2009 refusing to modify his written order while admitting that same was contrary to his ruling from the bench.   Docket # 94; Designation of Record # 12;

Defendants Showplace and Gaitway thereafter filed the additional motions to dismiss, which were opposed by Plaintiff and ultimately denied by Judge Frank.

In accordance with the Pretrial Order, liability and damages were bifurcated for trial.  Docket #89; Designation of Record # 10.  Two full days of trial have taken place on November 9 , 2009 and November 30, 2009, respectively.  On November 9, 2009, Plaintiff called as witnesses, Timothy Zearfoss, Esq., the attorney who filed his Chapter 7 Petition with the Bankruptcy Court; himself; and Jeffrey R. Pocaro, Esq., the attorney for all of the defendants herein, who had communicated with Mr. Zearfoss on the day the Chapter 7 Petition was filed  and who conducted  stableman's lien sales on horses Plaintiff was leasing two days thereafter on the premises of Defendant Gaitway and at another farm.  The sale notices advertised in the newspapers in circulation in the respective New Jersey counties had been pre-marked as Exhibits P-17 and P-18  and were so admitted into the trial record.

In his testimony on November 9, 2009, Mr. Pocaro identified himself not only as the attorney for the defendants conducting the February 18, 2007 stableman's lien sales but also as the "auctioneer" (Pocaro 11/9/2009 Transcript, p. 14) and admitted that the sale of the horse known as Mac's Emily BJ took place on Defendant Gaitway's Farm in a truck or trailer; and further, that Defendant Gaitway Farm held a pre-petition judgment against Plaintiff and the original owner of the horse, Brenda  J. McCord.   He also testified that he had written a letter dated February 20, 2007  (Exhibit P-8)  to Mr. Zearfoss in which he acknowledged that the stableman's lien sales had taken place after her learned of Plaintiff's Chapter 7 Petition, and that he had copied all of the defendants, including Gaitway Farm, Inc., on that letter.  He stated that  the stableman's lien sale of Mac's Emily BJ was held at  Defendant Gaitway's farm for a number of reasons that attested to a close relationship between Defendants Gaitway and Abbatiello and the advantages of that location, including that Mr. Abbatiello's "racing stable" was located at Gaitway; that "it is the most accessible place off the highway, the easiest place for people to get to a sale  .  .  .a well-known , well-established place to have a sale."  Pocaro 11/9/2009 Transcript, p. 39.

Mr. Pocaro also testified that he had  filed motions in the Superior Court of New Jersey, Cape May County, Special Civil Part, on or about March 27, 2007 (see Exhibit P-9)  to have the stableman's lien sales approved *nunc pro tunc*, as the United States Trotting Association (USTA), which keeps ownership and other records in the standardbred horse racing industry, required a Court Order before recognizing the purchases of the horses at the aforementioned stableman's lien sales.

At or about the time Mr. Pocaro's testimony was completed, Judge Frank inquired as to whether Plaintiff intended to call any other witnesses as part of his case-in-chief.  Counsel for Plaintiff indicated that they did not have any further witnesses at that time but reserved the right to call witnesses in rebuttal. Mr.  Pocaro then made oral motions *inter alia* for the dismissal of Defendants Showplace and Gaitway; he asserted that there was no evidence that Defendant Gaitway participated in the sale and violated the stay .

Counsel for Plaintiff opposed said motion arguing *inter alia* , in the case of Defendant Gaitway that it was uncontroverted that the sale of Mac's Emily BJ had taken place on that farm's premises; that the sale had been advertised in advance to be held there; that at the time that the March 27, 2007 motion to perfect or approve the sale was filed, Mr. Pocaro had given written notice (see Exhibit P-8) to Defendant Gaitway of Plaintiff's Chapter 7 Petition; that Defendant Gaitway took no action to cancel or "undo" the lien sale which had been held on it premises when the Bankruptcy Code's "automatic stay" of collection and lien enforcement proceedings was in effect.  Judge Frank then ruled from the  bench, dismissing Defendant Gaitway.  His Honor found that there was no evidence that "Gaitway participated in the sale." Judge Frank noted that there was mention of a relationship between Defendants Abbatiello and Gaitway and  an "inference" sought to be drawn therefrom but he concluded without any detailed reference to

the record that had been made -- including His Honor's own examination of Mr.
Pocaro as to why Defendant Abbatiello was permitted to enter onto Defendant
Gaitway's premises for the sale and why that was not a trespass  (Pocaro 11/9/2009
Transcript, pp. 38 -39)  -- that there was "no willful act in violation of the stay."

For those reasons, Judge Frank stated that he was entering "judgment
against Mr. Theokary and in favor of Gaitway." No findings of fact and conclusions
of law were placed on the record from the bench or by way of a written opinion.

An Order confirming the dismissal of Defendant Gaitway was entered
on November 23, 2009.  See Docket Entry # 112, Amended Designation of Record #
13.  The written Order stated that said defendant had "moved for the entry of
judgment pursuant to Fed. R. Bankr. P. 7052 ( incorporating Fed. R. Civ. P. 52(c))."
The Court found no specific facts but only stated its conclusion "that the Plaintiff
produced no evidence that the Defendant, Gaitway Farms, Inc. (sic), either
individually or in concert with others, violated the automatic stay after the
commencement of the Plaintiff's bankruptcy case in this Court."

On November 30, 2009, a second day of trial on liability took place
before Judge Frank.  At that time, Defendant Eric Abbatiello testified that he had
posted notices of the February 18, 2007 stableman's lien sale at each of the sixteen
(16) barns and in the kitchen on Defendant Gaitway's premises in order to attract
bidders at the sale; he testified that the notices he posted were the same as or
similar to the newspaper advertisements placed by his attorney and admitted into
the records as Exhibit P-17.   When counsel for Plaintiff endeavored, however, to
cross-examine Defendant Abbatiello on whether he had spoken to anyone at
Defendant Gaitway before posting the notices on its premises, counsel for
Defendants objected on the grounds that Defendant Gaitway had already been
dismissed from the case and Judge Frank sustained the objection.  At that point,
counsel for Plaintiff also referenced Fed . R. Civ. P. 52(c), which allows a  court to

"decline to render judgment until the close of the evidence," and also sought reconsideration of the Court's prior ruling entering judgment in favor of Defendant Gaitway.  Counsel for Plaintiff also articulated the need to develop a "full record." Judge Frank recognized that he could wait until the close of evidence before rendering such judgment but nonetheless denied the oral motion for reconsideration and refused to allow Plaintiff's counsel to cross-examine Defendant Abbatiello  fully as to his communications with Defendant Gaitway in connection with the post-petition stableman's lien sale..

Mr. Pocaro also admitted in his testimony at the November 30, 2009 trial date that he had faxed Defendant Abbatiello papers received from Plaintiff's attorney, Timothy Zearfoss, Esq., immediately after receiving them from Mr. Zearfoss, approximately two days prior to the stableman's lien sale at Defendant Gaitway's farm. (This was actually a reaffirmation of a stipulation given by Mr. Pocaro on the occasion of Mr. Abbatiello's May 26, 2009 deposition.)

At the November 30, 2009 trial date, Defendants also called several witnesses not on their pre-trial witness list for liability, including Defendants' co-counsel, Howard Taylor, Esq., and J. Neal Ehrhart.  They also re-called Defendant Tom Shay and Defendant Showplace manager, Bix De Meo.  Judge Frank allowed the former two witnesses to be called, overruling Plaintiff's objections thereto.

This appeal to the United States District Court for the Eastern District of Pennsylvania was filed on December 7, 2009.

IV. LEGAL ARGUMENT

<u>POINT ONE</u>:   THE BANKRUPTCY COURT'S ORDER DISMISSING
DEFENDANT GAITWAY FARM MUST BE VACATED AS IT FAILED
TO COMPLY WITH THE REQUIREMENTS FOR FINDINGS OF
FACT  AND CONCLUSIONS OF LAW, AS SET FORTH IN FED. R.
CIV. P. 52(C)

The motion for the dismissal of Defendant Gaitway Farm made by
Defendants' counsel on November 9, 2009, was considered by Judge Frank to be a
motion pursuant to Fed. R. Civ. P. 52.  In His Honor's written Order entered
November 23, 2009, that was made explicit as it is stated:   "  .  . Defendant
Gaitway Farms, Inc. (sic) having moved for the entry of judgment  pursuant to Fed.
R. Bankr. P. 7052 (incorporating Fed. R. Civ. P. 52(c))"  Docket Entry # 112.

It is submitted, in the first instance, that the Bankruptcy Court did not
comply with the requirements of Fed. R. Civ. P. 52 (c) for entry of "judgment on
partial findings."  That section of R. 52 provides, as follows:

> If a party has been fully heard on an issue during a
> non-jury issue and the court finds against the party on
> that issue, it may enter judgment against the party on a
> claim or defense that, under the controlling law, can be
> maintained or defeated only with a favorable finding on
> that issue.  The court, however, may decline to render any
> judgment until the close of the evidence.  A judgment on
> partial findings must be supported by findings of fact and
> conclusions of law as required by Rule 52(a).

Rule 52 (a)(1) requires generally that "[i]n an action tried on the facts
without a jury  .   .  . , the court must find the facts specially and state its
conclusions of law separately."

There was evidence presented on the first day of the trial, November 9, 2009, to show that Defendant Gaitway Farm was involved in the post-petition stableman's lien sales, namely  the testimony of Jeffrey R. Pocaro, Esq.  -- who represented  said Defendant in various collection actions against Plaintiff --, that said sale of the horse known as Mac's Emily BJ took place on its premises on Sunday, February 28, 2007; that the sale had been advertised in the Asbury Park Press  for that location by Mr. Pocaro (Exhibit P-17); that Timothy Zearfoss, Esq., who represented Plaintiff in the filing of his Chapter 7 Bankruptcy Petition, had advised Mr. Pocaro of the filing of said Petition on the Friday preceding the Sunday sale; that Mr. Pocaro, as the attorney of Defendant Gaitway as well as Defendant Abbatiello went forward with the lien sale at Defendant Gaitway's premises knowing full well of Plaintiff's bankruptcy filing and of his attorney's assertion that all collection actions -- including lien sales -- would be in violation of the "automatic stay" protections of the Bankruptcy Code. 11 U.S.C. § 362 (a).

There was also evidence that, after the stableman's lien sale had taken place on Defendant Gaitway's premises on February 18, 2007, Mr. Pocaro advised all of the defendants herein, including Defendant Gaitway, of the fact that the post-petition sale had taken place by copying them on a February 20, 2007 letter he sent to Mr. Zearfoss.  See  Exhibit P-8.  That letter to Mr. Zearfoss expressly referenced  lawsuits brought by Defendants Shay and Abbatiello Racing Stables against both Plaintiff Theokary and  codefendant McCord  and stated inter alia that "[t]he two (2) sales took place on Sunday, February 19, 2007;" although asserting that Mr. Theokary's rights were not implicated because he was not the owners of the horses sold at the sales.  He also acknowledged the Bankruptcy Court action and threatened Mr. Zearfoss with "Rule 11 sanctions" if  he were to "drag me or any  of my clients into [that] Court."  In addition to Defendants Shay and Abbatiello, Mr. Pocaro showed a copy to Defendants Showplace and Gaitway.  When one couples that letter sent to Defendant Gaitway by its attorney with the "Stableman's

-10-

Lien Sale Notice" indicating that "on February 18, 2007 . . . [t]he sale will be held at Gaitway Farm, Barn 6, 355 Route 33, Englishtown, NJ" there is clear (and indeed uncontested) evidence that Defendant Gaitway knew of the sale and, at least, thereafter -- but before there was judicial confirmation of the sale -- also knew of Plaintiff's bankruptcy filing.

        Notwithstanding the above-referenced evidence which was adduced on the first day of trial by Plaintiff and the breadth of the "automatic stay" provisions of the Bankruptcy Code, Judge Frank made **no** specific findings of fact and separate conclusions of law, as required under Fed. R. Civ. P. 52.  His Honor merely asserted summarily in the Order entered November 23, 2009, that the "court [was] concluding that the Plaintiff produced no evidence that Defendant Gaitway Farms, Inc. (sic), either individually or in concert with others, violated the automatic stay after the commencement of the Plaintiff's bankruptcy case in this court." Docket Entry # 112.  Indeed, the very fact that the sale took place at Defendant Gaitway's premises and that Defendant Abbatiello transported the subject horse to said premises for the sale and those premises were deemed more desirable for holding a lien sale than the farm of Mr. Abbatiello's parents (facts testified to by Mr. Pocaro on November 9, 2009 as a witness for Plaintiff) contradict the Court's assertion that there was no evidence that Defendant Gaitway Farm was acting in concert with another party as Defendant Abbatiello was using said defendant's premises for the post-petition lien sale.

        Under the express provisions of Fed. R. 52(c) and, more generally, the modern jurisprudence of the entry of judgment at non-jury trials in the federal court system, express findings and clear articulation of any conclusions of law are required. See,*e.g.,*Denofre v. Transportation Insurance Rating Bureau, 532 F.2d 43 (7th Cir. 1976); Chris Berg, Inc. v. Acme Mining Co., Inc., 893 F.2d 1235 (11th Cir. 1990); Trask v. Susskind, 376 F.2d 17 (5th Cir. 1967).  In Denofre v. Transp. Ins. Rating Bureau, the Seventh Circuit Court of Appeals  vacated  a judgment entered

on a motion to dismiss the plaintiff's Title VII employment discrimination, on grounds of a failure of "substantial compliance" with the strictures of Fed. R. Civ. P. 52 by the trial court.  532 F.2d at  45.

Initially, a motion was made by the defendants  in Denofre after the presentation of Plaintiff's case in chief, but the trial judge declined to "render judgment until the close of all the evidence." Id. at 44.  At that time, the trial judge issued some general statements referencing the plaintiff's demand for a raise and her employer's contention that her performance was unsatisfactory and concluding that the plaintiff's employer was not terminated in retaliation for her filing complaints of discrimination.  Id.  Upon plaintiff's counsel moving for reconsideration, the trial judge issue a written order summarily "affirm[ing]  [the] conclusion that Plaintiff failed to demonstrate at trial that her discharge from Defendant's employ was either the result of unlawful discrimination or an actionable breach of contract." Id.   The oral "opinion" of the trial court  was indeed far more detailed than the general statements issued by Judge Frank herein -- both from the bench and  in His Honor's written Order entered November 23, 2009.  The Seventh Circuit, nonetheless, found the trial judge not to be in compliance with Fed. R. Civ. P. 52, to wit:

> We find that substantial compliance with the fact-finding requirements of Rule 52(a) necessitates that the findings of fact on the merits include as many of the subsidiary facts as are necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue. (citations omitted).

> The only findings of fact in anywise made and entered by the District Court were those as expressed in the foregoing oral statement and written order of denial of Denofre's motion to reconsider which fail to disclose to us the steps by which the District Court reached its ultimate conclusion on one each factual issue.

-12-

>  We conclude that the District Court did not substantially comply with the findings of fact and conclusions of law requirements of Rule 52(a) as necessitated by Rule 41(b).
>
>  The Judgment of Dismissal entered by the District Court is vacated the cause is remanded to the District Court for the making and entering of findings of fact  and conclusions of law  upon the evidentiary record as now made, or further properly extended and amplified, in conformity with Rule 52(a).

532 F.2d at 45.

It is accordingly submitted that in the instant case, Judge Frank likewise failed to enter the specific findings of law and separate conclusions of law required under Fed. R. Civ. 52(a).  The mere summary statements which did not address specifically the evidence which had been adduced were legally insufficient and warrant the vacation of His Honor's Order of Dismissal; and, as ordered in Denofre, *supra,* requires the entry  of appropriate findings of fact and conclusions of law based on the full trial record.

It should also be noted that the practice of entering a judgment of dismissal before the close of evidence is clearly disfavored.  The preferable practice that would truly further the interests of justice is to carry such motion until the close of all evidence.  See, *e.g.,* Riegel  Fiber Corp. v. Anderson Gin Co., 512 F.2d 784 ( 5th Cir. 1983); U.S. v. American Tel. And Tel. Co., 524 F. Supp. 1336 (D.D.C.1981).  In this case, especially, given the uncontested  facts that the stableman's lien sale took place on Defendant Gaitway's premises, that Defendant Abbatiello and his attorney (Mr. Pocaro) deemed said premises to be a desirable venue for the lien sale  and that Defendant Gaitway also had an ongoing collection lawsuit against Plaintiff,  the development of a fuller record -- including the rebuttal evidence which Plaintiff's counsel reserved -- should have been awaited.

-13-

Moreover, Local Bankruptcy Rule 8001-1 provides that a "bankruptcy judge whose order is the subject of an appeal may, within 14 days of the filing of the notice of appeal, file a written opinion in support of the order or a written supplemental opinion that amplifies any earlier written opinion or recorded bench ruling or opinion."  Judge Frank has issued no such written opinion or supplemental written opinion herein.

POINT TWO:  DEFENDANT GAITWAY WAS A NECESSARY PARTY TO THE NEW JERSEY STABLEMAN'S LIEN SALE HELD AT THE BEHEST OF DEFENDANT ABBATIELLO  AND THUS THE DISMISSAL OF THE FORMER DEFENDANT IN THIS STAY VIOLATION ACTION WAS INAPPROPRIATE.

Without prejudice to the foregoing argument as to the Bankruptcy Court's failure to comply with Fed. R. Civ. P. 52 , its Order at issue also contravenes and ignores the New Jersey statute authorizing the "stableman's lien sale" which grants such lien and sale rights only to the  "keeper of a livery stable or boarding and exchange stable,  . . . on all animals left with him in livery, for board, sale or exchange . . . for the amount due such proprietor for the board and keep of such animal and also for such storage." N.J.SA. 2A: 44-51.  The uncontested evidence adduced at the November 9, 2009 trial herein (as  well as at the November 30, 2099 trial) was that Plaintiff contracted with Defendant Abbatiello to train the horse known as Mac's Emily BJ and with Defendant Gaitway to stable or "board" said horse on its premises.  See Joint Pretrial Statement, Section B (Statement of Uncontested Facts, ¶ 6.

Insofar, as a matter of New Jersey law, a "stableman's lien" exists only on "animals left with"  a "keeper of a livery stable or boarding and exchange stable," N.J.S.A. 2A:44-51, and Defendant Abbatiello did not maintain his own boarding

stable but rather utilized Defendant Gaitway's stable while training Mac's Emily BJ for Plaintiff, he could not, as a matter of law, hold a stableman's lien independently of Defendant Gaitway.  It is acknowledged that in a second paragraph of the aforesaid statutory section the "keeper of a livery stable" has been defined to include a "proprietor of a stable, a trainer, a veterinarian, a farrier . . " Id.  However, the first section of the statute clearly contemplates that such a "keeper" must have a location where he is "keeping" the horse while s/he provides such training or veterinary services.  In this case, the training and stabling services were being separately provided, by Defendants Abbatiello and Gaitway, respectively.

Indeed, the second section of the aforesaid statute is even more narrowly drafted and appear to confer the right to hold a sale "at public auction"  to the "proprietor" of the stable, to wit:

> Property retained  by the proprietor under this article shall be sold at public auction, after the expiration of 30 days from the date of such retention.

N.J.S.A. 2A:44-52

In the context of the above-referenced statute under which the

 February 18, 2007 stableman's lien sale took place at Defendant Gaitway Farm, it seems untenable, as a matter of law, that  Defendant Abbatiello could hold such a stable except "in concert with" (November 23, 2009 Order, Docket Entry # 112) Defendant Gaitway.  In short, Defendant Gaitway held the statutory lien and was legally necessary party, as the "proprietor" of the stable to hold a sale "at public auction."  N.J.S.A. 2A:44-52.   In addition to failing to find the facts and set forth specific conclusions of law under the Bankruptcy Code, the Bankruptcy Court failed to address the statutory conditions and  appropriate parties  in a New jersey stableman's lien sale.

POINT THREE:  ALL "ENTITIES" ENGAGING IN POST-PETITION
LIEN ENFORCEMENT  ACTIVITIES ARE LIABLE THEREFOR;
ACCORDINGLY  DEFENDANT GAITWAY FARM'S ALLOWANCE
OF  SUCH A  SALE TO BE HELD ON ITS PREMISES CAUSES IT,
AS WELL AS DEFENDANT ABBATIELLO, TO BE LIABLE
THEREFOR.

     The Bankruptcy Court's dismissal of Plaintiff's claims against
Defendant Gaitway also flies in the face of the Bankruptcy Code's  "automatic stay"
provisions.  11 U.S.C. § 362(a) stays a broad range of post-petition activities against
a broad range of parties, to wit:

> (a) Except as provided in subsection (b) of this section, a
> petition filed under section 301, 302, or 303 of this title, or
> an application filed under section 5(a)(3) of the Securities
> Investor Protection Act of 1970, operates as a stay,
> applicable to all entities, of -
>
> (2)  the enforcement, against the debtor or against
> property of the estate, of a judgment obtained before the
> commencement of the case under this title;
>
> (3)  any act to obtain possession of property of the estate
> or of property from the estate or to exercise control over
> property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against
> property of the estate;
>
> (5) any act to create, perfect, or enforce against property
> of the debtor any lien to the extent that such lien secures
> a claim that arose before the commencement of the case
> under this title

     In  the instant matter, it has been stipulated in the Uncontested
Facts contained in the Joint Pretrial Statement that all four defendants herein had

initiated collection actions in New Jersey Superior Court, Special Civil Part, against Plaintiff and Brenda McCord (d/b/a McCord Farms), for monies allegedly owed in connection with the boarding, training and related costs for horses Plaintiff was leasing from McCord Farms and its successor entity, The Highland Group, LLP. See Docket Entry ## 87, 89; Designation of Record ## 8,9 at Section B,  ¶¶ 10-17.

It has also been stipulated that two days following the filing of Plaintiff's Bankruptcy Petition, two stableman's lien sales took place of horses which Plaintiff was then leasing. Id.. at ¶ 27 (referring to ¶¶22 ,23)  One of those lien sales was of the horse known as Mac's Emily BJ and took place on Defendant Gaitway's premise. Id.   See also Transcript of Testimony of Mr. Pocaro (11/9/2009), p. 9, 10.  At that sale, Defendant Abbatiello purchased the horse for One Hundred ($100.00) Dollars. Id.

Finally, following the sale, on February 20, 2007, counsel for all Defendants, Jeffrey R. Pocaro, Esq., confirmed that the sale had taken place in a letter written to Plaintiff's then attorney, Timothy Zearfoss, Esq., id. at ¶ 28, and on which Defendant Gaitway (along with the other defendants) was copied. See Exhibit P-8.

After the stableman's lien sales had taken place and while the automatic stay was still in effect, Mr. Pocaro filed  motions in New Jersey Superior Court, to have the stableman's lien sales approved *nunc pro tunc,* which motions were returnable on March 27, 2007.  See Docket Entry ## 87, 89; Designation of Record ## 8,9 at Section B, ¶ 29.  (Mr. Pocaro testified that the post sale motions were needed because the United States Trotting Association would not accept as valid  owners the purchasers of the horses at those sales without a Court Order. Pocaro 11/9/2009 Transcript, pp. 21-22).  On that return date, the Superior Court Judge denied the motion, writing on the forms of Order prepared by Mr. Pocaro that

"Theokary bankruptcy filed prior to sale [and] there may be a stay based on the lease." Id. at ¶ 30.  Following a second set of motions and a letter which the Bankruptcy Trustee wrote to Mr. Pocaro (indicating that the bankruptcy estate would take no action to assume Plaintiff's leases) and did not copy Plaintiff or his counsel, the Superior Court  Judge on May 8, 2007, granted approval of the lien sales *nunc pro tunc.* Id. at ¶¶ 31-35 inclusive. See also Testimony of Plaintiff.

In sum, there were at least three separate occasions on which the defendants took action in violation of the "automatic stay" provisions of 11 U.S.C. § 362(a), to wit: (1) the February 18, 2007 stableman's lien sales; (2) the motions for *nunc pro tunc* judicial approval of said sales returnable March 27, 2007; (3)  the motions for *nunc pro tunc* judicial approval of said sales returnable May 8, 2007.

This statutory section "operates as a  stay applicable to all entities, of .  . (4) any act to create, perfect, or enforce any lien against property of the estate [and] (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." 11 U.S.C. § 362 (a).  The Bankruptcy Code also defines "entity" broadly, as follows: "The term 'entity' includes person, estate, trust, governmental unit, and United States trustee." 11 U.S.C. § 101 (15).  Thus, regardless of whether the February 18, 2007 stableman's lien sale held on its premises was at its specific behest or not, Defendant Gaitway could be liable for its action to "perfect" or "enforce"  a lien "against  property of the estate" or :"property of the debtor," 11 U.S.C. § 362(a)(4), (5), as it was an "entity" within the scope of the stay provision. 11 U.S.C. § 101(15).

The  caselaw is clear that in the case of lien sale not only the creditor initiating the collection actions but all parties involved in the sale may be liable for violation of the automatic stay.  See,  In re Kaufman, 315 B.R. 858 (Bkrtcy N.D. Cal. 2004) . In that case, the auction house where the debtor's personal

possessions  (including business-related materials) had been taken following her eviction from her residence, was held liable for the conduct of lien sale on its premises in adversary action.  315 B.R. at 863-64.  In the instant case, it was evident based upon the testimony adduced prior to the Court's granting Defendant Gaitway's motion for dismissal that Defendant Abbatiello and his auctioneer/attorney Mr. Pocaro felt it necessary or desirable to have the sale at Defendant Gaitway's premises because of accessibility, location and Mr. Abbatiello's close relationship with that defendant (see Statement of the Case and Facts, *supra).* Defendant Gaitway effectively became a party to the sale.

That became especially clear when Mr. Abbatiello testified that he not only held the sale at Defendant Gaitway's premises because of the reasons Mr. Pocaro articulated in his testimony but also that he had utilized the various barns (and even the kitchen ) to post notices of the sale in an attempt to attract bidders. When Plaintiff's counsel endeavored to explore the full extent of the communication between Defendant Abbatiello and Gaitway, however, the bankruptcy judge sustained defense counsel's objection. See Statement of the Case and Facts, *supra.* As the Kaufman decision makes clear, there are often multiple parties or actors involved in stay violations and each may be liable.  Especially in the case of the severe consequences that result from a lien sale of a debtor's property, *i.e.,* "divest[ing] of title," Kaufman, 315 B.R. at 864, development of a full record is necessary. In this case, even Plaintiff's ability fully to cross-examine a party defendant was precluded and justice effectively withheld.

The fact that Defendant Gaitway was a necessary party with Defendant Abbatiello to the February 18, 2007 stableman's lien sale of Mac's Emily BJ for the various reasons articulated above should have precluded the Bankruptcy Court's summary dismissal of that defendant, especially before the close of all of the evidence. It must also be borne in mind that the "automatic stay" is a "fundamental protection afforded by the [Bankruptcy] Code" and that which is " 'designed to effect

-19-

an immediate freeze of the *status quo* . . and protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment of its claims to the detriment of all others. ' ' <u>In re Alberts</u>, 381 B.R. 171, 176 (Bkrtcy W.D. Pa. 2008), citing <u>Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n</u>, 997 F.2d 581, 585 (9th Cir. 1993) (other citations omitted).  In the instant case, both Defendants Abbatiello and Gaitway, in concert, engaged in "post-petition actions . . . to obtain property of the debtor or property of the bankruptcy estate" which "the important and powerful remedy" of the automatic stay was intended to "preclude." <u>In re Alberts</u>, 381 B.R. at 176.

<u>Conclusion</u>

For all of the foregoing reasons, it is respectfully submitted that the  Order of the Bankruptcy Court entering judgment in favor of Defendant Gaitway and against Plaintiff Theokary be vacated.  Further, that the  Bankruptcy Court be ordered to reopen the record to allow Plaintiff's cross-examination of Defendant Abbatiello; and that any determination as to Defendant Gaitway's liability in this action be made only after appropriate findings of fact  and conclusion of law are entered in accordance with Fed. R. Civ. P.

Respectfully submitted,


<u>02/10/2010</u>                                <u>s/Michael J. Rutenberg</u>

Dated                                          MICHAEL J. RUTENBERG

KENNETH A. SANDLER, On the Brief

Attorneys for Plaintiff