# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAFAIL THEOKARY,** | : | **CIVIL ACTION** |
| **Plaintiff-Appellant,** | : | |
| | : | |
| v. | : | |
| | : | |
| **TOM SHAY, et al.** | : | |
| **Defendants-Appellees.** | : | **NO. 10-0058** |

## MEMORANDUM

RESTREPO, J.                                                    OCTOBER 29, 2013

This appeal comes before the Court on Plaintiff-Appellant Rafail Theokary's certificates of appeal from the United States Bankruptcy Court for the Eastern District of Pennsylvania arising out of that Court's Orders and Opinions made in connection with Theokary's bankruptcy adversary case.[1] Theokary filed for Chapter 7 bankruptcy.[2] (R. 4 (Feb. 14, 2011 Order) at 1-2.) Subsequently, he filed an adversary proceeding against Defendants-Appellees Eric Abbatiello, Tom Shay, Showplace Farms ("Showplace") and Gaitway Farms, Inc. ("Gaitway") in the Bankruptcy Court, alleging that they willfully violated the automatic stay that arose upon Theokary's filing of his bankruptcy petition. (Id. at 1-2.) The Bankruptcy Court dismissed Showplace and Gaitway, upon determining that they did not violate the stay. (R. 3 (Feb. 14,

---

[1]By Order filed Oct. 18, 2013, Civil Action Nos. 10-0058, 11-3556, and 12-2844 were consolidated. (See Civ. A. No. 10-0058, Document 48) The Clerk of Court was directed to docket all filings under Civil Action No. 10-0058 and to mark as closed Civil Action Nos. 11-3556 and 12-2844.

[2]References to the record before this Court which includes Opinions, Orders, transcripts, and other documents forwarded to this Court by the Clerk of the Bankruptcy Court are cited herein as "R." immediately followed by the corresponding tab number which identifies each document included in the record from the Bankruptcy Court.

2011 Op.) at 33.)  Then, finding that Theokary had in bad faith abused the judicial process, that

Court, pursuant to its inherent power, dismissed Theokary's adversary proceeding, which was

still pending against Defendants Shay and Abbatiello, with prejudice.  (Id.)

Theokary's appeal arose in this Court under three separate civil actions.  (Civ. A. No. 12-

2844, Doc. No. 1 (Appeal Cert.); Civ. A. No. 11-3566, Doc. No. 1 (Appeal Cert.); and Civ. A.

No. 10-0058, Doc. No. 1 (Appeal Cert.).)  In those appeals, Theokary asserted that the

Bankruptcy Court erred in ordering the dismissal of: (1) Showplace; (2) Gaitway; and (3) the

adversary proceeding.  (R. 1 (Notice of Appeal) at 1.)

As explained more fully below, the Court consolidated these three actions, see supra note

1, and for the reasons which follow, the Bankruptcy Court's April 10, 2012 Opinion dismissing

the adversary proceeding is affirmed.  This ruling moots Theokary's other grounds for appeal.

Therefore, the Bankruptcy Court's February 14, 2011 Opinion is modified to dismiss the claims

against Showplace and Gaitway as moot.

## 1.  FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2005, Theokary leased two horses, Mac Only VP ("VP") and Mac's Emily BJ

("Emily"), for a 24-month term from McCord Farms.  (R. 3 at 7.)  He entered another 24-month

lease with McCord Farms on July 23, 2005, for the horse named Mac's Derrick T ("Derrick").

(Id.)  In January 2006, Theokary hired Shay to train Derrick and VP, and Abbatiello to train

Emily.  (Id. at 7-8.)

Initially, Shay boarded Derrick and VP at Showplace, and in May of 2006, he took them

to another facility.  In October of 2006, he took them to Magical Acres Farm, where they

remained through February 18, 2007.  (Id. at 8.)  Abbatiello boarded Emily at Gaitway initially; in August 2006, he took Emily to another farm where Emily remained until February 18, 2007. (Id. at 9.)  On that date, Abbatiello transported Emily to Gaitway for purposes of exposing the horse to a stableman's lien sale, then, after the sale, he took Emily back to the other farm.  (Id.)

Theokary failed to pay Shay and Abbatiello for all of the training fees and failed to reimburse Showplace and Gaitway for all of the boarding costs that had come due.  (Id.)  As a result, on April 12, 2006, Shay and Abbatiello each separately filed, and, later on May 30, 2006, Showplace and Gaitway each separately filed a lawsuit in the Superior Court of New Jersey, Cape May County against Theokary and Brenda McCord for unpaid bills.  (Id.)

On May 23, 2006, Theokary filed a chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey.  (Id. at 10.)  Subsequently, all four of the aforementioned state court complaints were dismissed without prejudice.  (Id.)  On October 5, 2006, the New Jersey Bankruptcy Court dismissed the chapter 13 bankruptcy case "for bad faith filing" and barred Theokary from filing another chapter 13 bankruptcy case for 180 days from entry of that Court's Order.  (Id.)[3]

Prior to October 31, 2006, McCord Farms transferred legal ownership of Derrick, VP and Emily (collectively, the "Horses") to The Highland Group, LLC.  (Id. at 11.)  Apparently to respond to the transfer, on October 31, 2006, The Highland Group, LLC and Theokary entered three leases, a separate lease for each of the Horses, that terminated on December 31, 2011.  (Id.)

---

[3]Prior to his May 23, 2006 chapter 13 bankruptcy filing, Theokary had unsuccessfully filed three other chapter 13 bankruptcy cases in Pennsylvania.  (R.3, at 10 n.13.)  Those filings were made in 1998, 2001, and 2002.  (Id.)

Shay and Abbatiello's attorney, Jeffrey R. Pocaro, placed notices in newspapers for two stableman's lien sales to be conducted on February 18, 2007, a sale of Derrick and VP at Magical Acres, and a sale of Emily at Gaitway. (Id.) On February 16, 2007, Theokary commenced a Chapter 7 bankruptcy case in which he disclosed a leasehold interest in the Horses. (Id. at 3.) That same day, Theokary's attorney contacted Pocaro and notified him of the bankruptcy filing and that the sales were stayed as a result of the filing. (Id. at 12.) Pocaro did not believe the stay applied to the sales because the sales were directed against the Horses' owner. (Id.) Therefore, Pocaro proceeded with the sales. (Id. at 12-13.) Shay purchased Derrick and VP, and Abbatiello purchased Emily. (Id.)

On February 20, 2007, Shay and Abbatiello filed motions in the New Jersey Superior Court to have the sales retroactively approved nunc pro tunc. (Id. at 14.) On March 27, 2007, that court denied their motions without prejudice explaining: "Theokary bankruptcy filed prior to sale and there may be a stay based on the lease." (Id.) On April 13, 2007, the chapter 7 Trustee informed Shay and Abbatiello that he did not intend to assume the leases. (Id.) Shay and Abbatiello, on April 19, 2007, again filed motions in the New Jersey Superior Court to have the sales retroactively approved nunc pro tunc. (Id.) Through two May 8, 2007 Orders, that court approved the sales and, as a result, Shay became the owner of Derrick and VP and Abbatiello became the owner of Emily. (Id. at 14-15.)

The chapter 7 Trustee filed a no-asset report on September 12, 2007, and on January 8, 2008, the trustee reported the meeting of creditors as "concluded." (Id. at 3.) On January 14, 2008, the Bankruptcy Court entered a chapter 7 discharge and ordered that the Clerk of Court close the case. (Id.) Three days later, the Clerk of Court closed the case. (Id.) On August 27,

2008, Theokary moved to reopen the case and the Bankruptcy Court granted his motion. (Id.)

On February 20, 2009, Theokary filed an adversary proceeding complaint asserting that

Abbatiello, Shay, Showplace and Gaitway (collectively "Defendants") violated the automatic

stay during the course of his bankruptcy case. (R. 3, at 1, 4.) United States Bankruptcy Judge

Eric L. Frank bifurcated the trial's liability and damages phases. (Id.)


**Theokary's First Appeal**

The trial began on November 9, 2009. (Id. at 4.) After Theokary completed his

presentation, Defendants moved for entry of judgment in their favor. (Id.) Judge Frank orally

granted the motion only as to Gaitway. (Id. at 4-5.) Judge Frank's order was memorialized in a

written order that was entered on the docket on November 23, 2009. (Id. at 5; R. 10 (Bankr.

Docket) at 7.) On December 7, 2009, Theokary appealed that order to this Court. (R. 3, at 5; R.

10, at 12.) The Clerk of Court filed that appeal under Civil Action No. 10-0058 (the "Gaitway

Appeal"). (Civ. A. No. 10-0058, Docket No. 1.) On July 2, 2010, United States District Court

Judge Gene E.K. Pratter remanded the appeal "for further findings of fact and conclusions of

law." (Civ. A. No. 10-0058, Document No. 22, at 1-2.)

Judge Frank issued a February 14, 2011 Opinion, to comply with Judge Pratter's mandate

setting forth findings of fact and conclusions of law. (R. 3, at 1-34.) According to Judge Frank,

Abbatiello "was sufficiently involved in the stableman's lien sale, with notice of the bankruptcy

filing, to justify the finding that he violated the automatic stay." (R. 3, at 28-29.) Additionally,

the Bankruptcy Court determined that, "Shay had granted Pocaro broad discretion in determining

how to obtain payment of [Theokary's] unpaid bill" and "Pocaro . . . proceeded with the

stableman's lien sale with full knowledge of the bankruptcy filing." (R. 3, at 29.)  In  Judge

Frank's view, Shay was liable as a "creditor-principal . . . for the acts of [his] agent . . . ."  (R.3,

at 29-30.)  Moreover, the Bankruptcy Court found that, "[Theokary] presented no evidence that

Gaitway took any action to enforce its lien after the commencement of [Theokary's] bankruptcy

case . . . ."  (R. 3, at 30.)  Furthermore, the Bankruptcy Judge wrote that: "Showplace did not

interfere with any right [Theokary] may have had to take possession of the two horses.  It follows

that Showplace did not take any action to possess or control property of the bankruptcy estate . . .

."  (R. 3, at 33.)  In conclusion, Judge Frank held that:

> . . . I have determined that Shay and Abbatiello violated 11 U.S.C. §
> 362(a)(3)[, the automatic stay,] and that Showplace and Gaitway have
> not violated the automatic stay.  Therefore, I will hold enter [sic]
> judgment in the Debtor's favor against Shay and Abbatiello, conduct
> a damages hearing on the Debtor's successful claims and enter
> judgment in favor of Showplace and Gaitway and against the Debtor.

(R. 3, at 33-34.)

Subsequently, Judge Pratter permitted Theokary to file a brief in connection with the

Gaitway Appeal.  (Civ. A. No. 10-0058, Doc. No. 24.)  Theokary and Gaitway filed their

pleadings.  (Civ. A. No. 10-0058, Doc. Nos. 26 (Appellant's Br.), 27 (Appellee's Br.).)


### Theokary's Second Appeal and Subject Matter Jurisdiction

Meanwhile, on June 2, 2011, Theokary filed in this Court a second certificate of appeal

from Judge Frank's February 14, 2011 Order in connection with his dismissal of Showplace.

(Civ. A. No. 11-3556, Doc. No. 1 (Cert. of Appeal), Doc. No. 4 (Appellant's Br.) at 5.)  The

Clerk of Court filed that appeal under Civil Action No. 11-3556 (the "Showplace Appeal").

(Civ. A. No. 11-3556, Doc. No. 1.)  On appeal, Theokary and Showplace filed their briefing.

(Civ. A. No. 11-3556, Doc. Nos. 4 (Appellant's Br.), 6 (Appellee's Resp.), 8 (Appellant's Reply), 14 (Appellee's Supp. Br.), and 16 (Appellant's Supp. Br.).)

On November 21, 2011, Judge Pratter held a hearing wherein she identified a concern about the Court's subject matter jurisdiction over the Gaitway Appeal and Showplace Appeal. (Civ. A. No. 11-3556, Hr'g Tr. at 12:6-10, 17:9-12 (Nov. 21, 2011) (emphasis added).)[4] In response, Theokary, Showplace and Gaitway filed supplemental briefing regarding the Court's subject matter jurisdiction. (See Civ. A. No. 11-3556, Doc. Nos. 22 (Appellee's Br.), 24 (Appellant's Br.); Civ. A. No. 10-0058, Doc. Nos. 32 (Appellee's Br.), 33 (Appellant's Br.).)

---

[4]At the hearing, Judge Pratter stated:

> I am concerned and I think there is a real issue as to whether or not this is an interlocutory appeal, if these are interlocutory appeals, and that I have no subject matter jurisdiction at this time.
>
> . . . . And so I think that this may, that under Rule 54 of the Federal Rules of Civil Procedure **I may not have jurisdiction because the final decisions that you**, his decisions that you **purport to be appealing are not yet final, because you haven't got final orders or decisions against all of the defendants.**
>
> . . .
>
> I don't believe there is a final judgment . . ., because as long as it's only been liability and not damages there's still something left for the bankruptcy court to do . . . .

(Civ. A. No. 11-3556, Hr'g Tr. 12:6-10; 17:9-12 (Nov. 21, 2011) (emphasis added).)

## Theokary's Expert Report[5]

On September 9, 2009, Theokary's attorneys, Kenneth Sandler and Michael J. Rutenberg, and Shay and Abbatiello's attorneys, Pocaro and Howard Taylor, filed a Joint Pretrial Statement ("JPS") in which Theokary identified Antonius Kimbrough as Theokary's only expert witness at trial. (R. 5 (Apr. 10, 2012 Op.) at 4-5.) Based on a damages memorandum (the "Guest Memo") created by an individual named Stan Guest and also based on telephone conversations with Theokary and Guest, Rutenberg prepared an itemized list of Theokary's alleged damages (the "Damages Section") that was incorporated into the JPS. (R. 5, at 5-6.)

The Damages Section is substantially similar to the Guest Memo, and several calculations in the documents are identical. (Id.) The Damages Section includes an erroneous assumption that, despite a gestation period of eleven months, a mare would bear seven foals per year. (R. 5, at 6-7 n.11.) Apparently, Rutenberg made an error in transposing information from the Guest Memo. (Id. at 7, n.12.)

Samuel Paparo did not contribute to drafting the Damages Section and was not identified as a potential expert witness in the JPS. (Id. at 7.) On September 27, 2009, Rutenberg, Theokary and Paparo met to discuss Paparo's possible retention as an expert witness. (Id.) On October 7, 2009, Rutenberg sent Paparo a letter in which Rutenberg requested that Paparo provide a resume and an expert's report. (Id. at 7-8.) Subsequently, Paparo advised Rutenberg that he was not willing to be an expert witness, and Paparo did not prepare a report. (Id. at 8.)

---

[5]The Court, deviating from the chronological recitation of the procedural facts, shall present the pertinent facts that specifically relate to the expert report and Judge Frank's adjudication dismissing Theokary's cause of action.

On March 10, 2011, the Bankruptcy Court, extended the deadline to conduct witness discovery and the expert witness identification deadline to April 22, 2011.  (R. 5, at 9.)  On April 21, 2011, Theokary delivered to Sandler an expert report having a redacted signature (the "Redacted Report") and an expert's curriculum vitae having redacted identifying information (the "Redacted CV").  (Id. at 9.)  Sandler provided Shay and Abbatiello's counsel with these redacted materials.  (Id.)  On April 22, 2011, Sandler, who did not know the expert's identity, moved for a protective order limiting the disclosure of the expert's identity.  (Id. at 9-10.)

On April 29, 2011, Judge Frank denied the motion for a protective order and ordered Theokary to produce an unredacted report (the "Report") and curriculum vitae ("CV").  (Id. at 10.)  During a May 13, 2011 telephone conference, Pocaro stated that the Report bore a striking similarity to the Damages Section.  (Id.)  He requested an opportunity to examine the Report and CV's metadata to determine when they were prepared and whether they were prepared on Paparo or Theokary's computer.  (Id. at 11 n.19.)  Judge Frank ordered that Theokary produce the Report and CV in an electronic form in original, word processing format and prior to Paparo's May 19, 2011 deposition.  (Id. at 10-11.)

Pocaro told Sandler that the Report contained an error regarding the number of foals that a mare could bear over a five year period.  (Id. at 12.)  Sandler spoke with Theokary about the error.  (Id.)  Prior to the start of Paparo's deposition, Paparo handed Pocaro a CD containing a PDF version of an amended Report.  (Id.)  The amended Report corrected the error that Pocaro identified.  (Id. at 13)  On May 24, 2011, Shay and Abbatiello filed a motion in limine and to dismiss.  (Id. at 2 & 13.)  The motion disputes that Paparo genuinely drafted the expert report.  (Id. at 2.)  Shay and Abbatiello moved to: (i) "bar Paparo from testifying as an expert witness;"

and (ii) "dismiss the adversary proceedings" on the basis that Theokary "could not prove his alleged damages without an expert." (Id.) The Bankruptcy Court deferred ruling on the motion until after the trial on damages. (Id. at 13.)

Judge Frank commenced the damages trial on June 13, 2011. (Id. at 14.) The Bankruptcy Court permitted Shay and Abbatiello to call their expert out of sequence. (Id.) Subsequently, Theokary called Paparo as an expert, and, after voire dire, Judge Frank determined that Paparo was not qualified to testify as an expert witness. (Id. at 15.) On July 26, 2011, the Bankruptcy Court granted Theokary's motion to proceed pro se. (R. 10, at 22, Doc. No. 234.)

## The Bankruptcy Court's April 10, 2012 Opinion

Judge Frank issued an Opinion on April 10, 2012, in which he determined in relevant part that:

•      Paparo did not author the Report or the amended Report;

•      Theokary prepared the Report and the amended Report by plagiarizing the Damages Section;

•      Theokary, knowing that Paparo did not draft the Report and the amended Report, attempted to "pass off" those documents as Paparo's work product; and

•      "Theokary attempted to commit a fraud on the court by knowingly and in bad faith offering this evidence under false pretenses."

(Id.)

The Bankruptcy Court found that the similarities between the Guest Memo, the Damages Section, the Report and the amended Report could not be a coincidence and that "[t]he evidence

is clear and convincing that the author of the [Report and amended Report] plagiarized the JPS Damages Section." (Id. at 16.)  In the Opinion, the Bankruptcy Court considered whether a benign explanation existed for the plagiarism, but concluded that the record did not support such an explanation.  (Id. at 16-21.)  Additionally, Theokary failed to offer a "relatively straightforward argument" to explain the plagiarism.  (Id.)  Moreover, that court explained:

> [Theokary] and Paparo both testified that the [Report and amended Report] were legitimate, later versions of an earlier report **that Paparo himself prepared in 2009** . . . .  Yet, neither [Theokary] nor Paparo produced any document that even remotely resembled an expert report prepared in 2009.  . . . His failure to make a timely concerted effort to locate the 2009 report and produce it (assuming that such a report ever existed) leads me to discredit [Theokary's] testimony on this point.

(Id. at 17-18 (emphasis in original).)

The Bankruptcy Judge concluded that Theokary plagiarized the reports.  (Id. at 19.)[6]  The Judge also determined that Theokary presented the false evidence to that Court and that his attorneys, without any specific intent, failed to restrain him.  (Id. at 21-23.)[7]  In their post-trial

---

[6]Judge Frank found Sandler's testimony that Theokary delivered the Redacted Report and Redacted CV to Sandler to be credible.  (R. 5, at 19.)  The Court decided that Theokary had drafted the documents, and not Paparo, because: Theokary had a greater incentive to engage in the deception; Paparo appeared to only be participating in the litigation under pressure from Theokary; Paparo appeared to lack the education and skill to prepare the reports; Theokary delivered the reports to his attorney; and Theokary, during Paparo's deposition, blurted out that his attorney had told Theokary to make a revision to the Report.  (Id. at 19-20.)

[7]The court explained that Sandler and Rutenberg "fell short of the duties as counsel" in that Sandler "lost control of the litigation" and forwarded an expert report to Pocaro without even knowing who the expert was, and Rutenberg was so disengaged in performing his obligations as counsel that he did not notice Theokary's plagiarism of Rutenberg's own Damages Section.  (R. 5, at 21-23.)

submission, Defendants, citing <u>Poulis v. State Farm Fire and Casualty Co.</u>, 747 F.2d 863 (3d Cir. 1984), repeated a request made during their closing arguments for sanctions.  (R. 5, at 24.)[8]

Examining the Court's power to issue a sanction by way of its inherent powers, Judge Frank described the prerequisites of finding that a party: (i) acted in bad faith; and (ii) received due process.  (<u>Id.</u> at 30 (citing <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 49-50 (1991).)  Additionally, the Court, citing <u>Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc.</u>, 57 F.3d 1215, 1225 (3d Cir. 1995), explained that "notice of the precise sanctioning tool is not always required."  (R. 5, at 31.)

Judge Frank found that Theokary had received due process.  (<u>Id.</u>)  The Bankruptcy Court explained Theokary's due process rights:

> In this context, due process requires that the respondent receive particularized notice of the conduct at issue, what the party "must address if he is to avoid sanctions" and, of course, an opportunity to be heard in the form of an evidentiary hearing. <u>Fellheimer</u>, 57 F.3d at 1225 . . .
>
> . . .
>
> . . . Notice is sufficient if the responding party is aware that he or she is being charged with bad faith conduct and needs to confront this charge to defend against the imposition of sanctions.

(<u>Id.</u> at 30-31 (citations omitted).)  The Bankruptcy Court then concluded that sanctioning Theokary would not violate his due process rights:

---

[8]Defendants also cited Fed. R. Civ. P. 37 and 41.  (R. 5, at 24.)  In Judge Frank's view, Rules 37 or 41 did not provide a basis for the imposition of a sanctions, but he considered whether Rule 9011 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") or a court's "inherent power" provided such a basis.  (<u>Id.</u> at 25.) According to Judge Frank, Bankruptcy Rule 9011, which regulates attorney conduct, was an inappropriate mechanism for imposing sanctions because Theokary, the client, was the "more culpable actor."  (<u>Id.</u>)

> Defendants' Motion put the Debtor on notice as to the precise nature
> of his alleged misconduct. The Motion further identified the sanction
> requested: dismissal of the Debtor's claims. The Debtor understood
> both the factual issues involved in the request for sanctions, as well
> as the stakes. Indeed, both sides expended considerable time during
> the consolidated trial addressing the <u>bona fides</u> of the 2 Reports that
> the Debtor personally vouched for and falsely offered to the court as
> Paparo's work product.
>
> [D]ebtor never expressed any concern that he would be prejudiced in
> preparing his defense against the Motion in the absence of notice of
> the legal basis . . .

(<u>Id.</u> at 31-32 (emphasis in original).)  Judge Frank concluded that sanctions should be imposed

against Theokary:

> . . . Debtor knowingly manufactured and presented false evidence to
> the court. He knew that Paparo was neither the primary source of the
> JPS Damages Section nor the author of the 2 Reports. . . . I have
> found that the Debtor was the primary actor responsible for carrying
> out the attempted fraud upon the court. Consequently, the necessary
> sanction for this abuse of the legal system should be directed against
> the Debtor.

(<u>Id.</u> at 32.)

In evaluating the propriety of punitively dismissing the adversary complaint, as

Defendants had requested, the Bankruptcy Court examined the six factors that the United States

Court of Appeals for the Third Circuit listed in <u>Poulis</u>.  (<u>Id.</u> at 33-40.)  Balancing the <u>Poulis</u>

factors, Judge Frank held that Theokary had demonstrated "bad faith abuse of the judicial

process" and dismissed Theokary's adversary complaint with prejudice pursuant to that Court's

inherent power.  (R. 5, at 40.)

**Theokary's Third Appeal and Proceedings in this Court**

On May 24, 2012, Theokary filed another certificate of appeal regarding the April 10, 2012 Opinion dismissing the adversary complaint. (Civ. A. No. 12-2844, Document No. 1 (Cert. of Appeal), Doc. No. 17 (Appellant's Br.) at 29.) The Clerk of Court filed that appeal under Civil Action No. 12-2844 (the "Sanction Appeal"), and the case was initially assigned to Judge Pratter. (Civ. A. No. 12-2844, Document No. 1.)

Following the parties' briefing (Civ. A. No. 12-CV-2844, Document Nos. 17 (Appellant's Br.), 18 (Appellees' Resp.), and 19 (Appellant's Reply)), on July 24, 2013, Civil Action No. 12-2844 was reassigned from the calendar of Judge Pratter to my calendar. On August 13, 2013, Civil Action Nos. 10-0058 and 11-3556 were also reassigned to my calendar, as related to Civil Action No. 12-2844. (Civ. A. No. 11-3556, Document No. 35; Civ. A. No. 12-2844, Doc. No. 20; Civ. A. No. 10-0058, Doc. No. 47.)

### 2. CONSOLIDATION

By Order filed October 18, 2013, Civil Action Nos. 10-0058, 11-3556, and 12-2844 were consolidated, the Clerk of Court was directed to docket all filings under Civil Action No. 10-0058, and Civil Action Nos. 11-3556 and 12-2844 were marked closed. Pursuant to Rule 42(a), "If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . ." See Fed. R. Civ. P. 42(a). "A district court has broad discretion when determining whether consolidation is appropriate." Borough of Olyphant v. PPL Corp., 153 Fed. Appx. 80, 82 (3d Cir. 2005) (unpublished). In determining whether consolidation is appropriate, "the Court balances 'the risk of prejudice and confusion . . . against the risk of

inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated.'" <u>Myers v. New Castle County</u>, 2013 WL 3853181, *1 (D. Del. July 24, 2013) (quoting <u>Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.</u>, 770 F. Supp.2d 283, 286 (D. D.C. 2011)).  Moreover, "District courts have the inherent authority to order consolidation <u>sua</u> <u>sponte</u>." <u>Mendez v. C.W.S.O.T.C.O.</u>, 2013 WL 3956666, *1 (D. Del. July 29, 2013) (quoting <u>Plimpton v. Cooper</u>, 141 F. Supp.2d 573, 575 (W.D. N.C. 2001)).

There are common issues between the Gaitway Appeal, Showplace Appeal and Sanction Appeal in that all three appeals arose out of the same bankruptcy adversary proceeding.  (See Civ. A. No. 10-0058, Document No. 26 at 1; Civ. A. No. 11-3556, Doc. No. 4 at 1; Civ. A. No. 12-2844, Doc. No. 12 at 1.)  Moreover, the adjudication of the legal issue raised in Theokary's Sanction Appeal, specifically the validity of the April 14, 2012 Opinion, affects Theokary's Gaitway and Showplace Appeals.  If the adversary complaint dismissal is affirmed, then the Gaitway and Showplace Appeals become moot.

Consolidation promotes judicial economy by allowing the Court to address cases at one time without the need for useless repetition.  Additionally, consolidation does not cause any confusion under these circumstances.  Consolidation also does not delay the resolution of Theokary's appeals, otherwise prejudice the parties, create inconsistent rulings, create additional burdens for the parties or cause the parties to endure any additional expenses.

### 3. JURISDICTION

"The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . ." 28 U.S.C. § 158(a). In his April 14, 2012 Opinion, Judge Frank issued a final judgment dismissing Theokary's adversary complaint. (R. 5, at 40.) Thus, this Court has jurisdiction over Theokary's appeals.[9]

### 4. STANDARD OF REVIEW

Bankruptcy Rule 8013 provides: "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." On appeal, a court reviews a trial court's dismissal for an abuse of discretion. See Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987) (stating that on appeal, court considers whether trial court abused discretion in dismissing case). "An abuse of discretion occurs when the Court rests upon clearly erroneous findings of fact, an errant conclusion of law, or an improper application of law to fact." In re Olick, 498 Fed Appx. at 157; accord Lampe v. Lampe, 665 F.3d 506, 514 (3d Cir. 2011) ("We exercise plenary review of the District Court's order and, like that Court, apply a clearly erroneous standard of review to the Bankruptcy Court's factual findings and review its conclusions of law de novo.").

---

[9]Judge Pratter voiced her concern about the Court's subject matter jurisdiction questioning whether this Court could proceed with the Gaitway and Showplace Appeals while the Bankruptcy Court was still conducting proceedings involving Shay and Abbatiello. (Civ. A. Nos. 11-3556, Hr'g Tr. 12:6-10, 17:9-12 (Nov. 21, 2011).) Since then, the Bankruptcy Court has concluded the underlying proceedings through its April 14, 2012 Opinion that dismissed the adversary proceeding (R.5, at 40), and, as a result, provided this Court with clear subject matter jurisdiction.

To determine whether a sanction of dismissal is appropriate in light of a party's bad act(s), a court must analyze such conduct in connection with the factors set forth by the Third Circuit in Poulis, 747 F.2d at 868.  The factors (the "Poulis Factors") are:

> (1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

Id. (emphasis in original).  "[N]ot all of these factors need be met for a district court to find dismissal is warranted . . . ."  In re Nealen, 397 Fed Appx. 742, 743 (3d Cir. 2010).  The Third Circuit, however, requires courts to consider and balance all the factors, and the failure to do so prior to dismissing an action "constitutes an abuse of discretion."  Id.

**5.  DISCUSSION**

**(A)  Sanction Appeal**

Theokary makes two arguments in his brief on appeal: (1) Shay and Abbatiello asserted that dismissal was appropriate because Theokary could not prove his damages without an expert, and they did not raise the grounds for dismissal set forth in Judge Frank's Opinion imposing the sanction of dismissal (Civ. A. No. 12-2844, Document 17, at 20); and (2) the Poulis factors do not warrant dismissal of the adversary complaint (id. at 22).

Initially, the Court will address Theokary's first argument to the extent that he asserts that the Bankruptcy Court's imposition of sanctions sua sponte trampled his due process rights.  Next, the Court will address his appeal in connection with whether the Bankruptcy Court's sanction of

dismissal after consideration of the Poulis Factors constituted an abuse of discretion.  Since the

Court finds that the Bankruptcy Court did not abuse its discretion in sanctioning Theokary, it is

unnecessary to address the remaining arguments.


### (i)  Sua Sponte Sanctions

Theokary argues that the Bankruptcy Court lacked authority to issue the sanctions: "[T]he

Court did not state that it was seeking dismissal of [his] adversary complaint sua sponte and did

not provide [him] or counsel with advance notice of same . . ."  (Civil A. No. 12-2844,

Document No. 17, at 22 (emphasis in original).)[10]  He takes issue with the "sua sponte" dismissal

or, in other words, the mechanism of dismissing his adversary complaint.

In imposing dismissal, the Bankruptcy Court relied on Fellheimer, 57 F.3d at 1225, for

the proposition that "notice of the precise sanctioning tool is not always required."  (R. 5, at 31.)

In Fellheimer, a Bankruptcy Court imposed sanctions on a party, and the Third Circuit held that

the sanctioned party had received sufficient notice where it faced allegations that it acted

improperly.  Id. at 1226-27.  In that case, the party requesting sanctions had filed a motion

identifying the sanctioned party's bad conduct.  (Id. at 1226.)  Additionally, during a hearing, the

Bankruptcy Court stated that it suspected the sanctioned party of having acted inappropriately.

(Id.)

---

[10]This argument does not assert that the Bankruptcy Court relied on any clearly erroneous
finding of fact.  To be clear, Theokary does not argue that he lacked notice as to either the nature
of his misconduct or that such conduct could result in dismissal of his case.  (See Civ. A. 12-
2844, Document No. 17, at 22; cf. R. 5, at 31 (Bankruptcy Court's Order stating that Theokary
was on notice of the nature of his conduct and that he was facing dismissal).)

Fellheimer is similar to this case. Here, the Bankruptcy Court found that the motion informed Theokary of the specific misconduct. (R. 5, at 3.) Moreover, he should have been aware of his inappropriate conduct when during trial the parties "expended considerable time" addressing the validity of the expert reports that he personally offered to the Bankruptcy Court. (R. 5, at 3.) He does not assert that the Bankruptcy Court erroneously relied on Fellheimer. (See Civ. A. 12-2844, Document No. 17, at 22.) He also does not characterize the motion or hearing as an insufficient vehicle to provide him with notice that he faced sanctions. (See id.)

Theokary received proper notice consistent with his due process rights, and the Bankruptcy Court's imposition of sua sponte sanctions were consistent with his due process rights. Therefore, Judge Frank properly concluded that there was no due process violation.

### (ii) Poulis Factors

#### (a) *Personal Responsibility*

Theokary argues that the Bankruptcy Court did not properly analyze the personal responsibility factor (id. at 24) when it found that he was personally responsible, because he, in conjunction with Paparo, manufactured the false evidence (R. 5, at 34-35). The Bankruptcy Court found that such conduct makes Theokary more culpable than his counsel. (Id.)

Theokary makes a semantic argument that the Bankruptcy Court improperly labeled his expert reports as "false evidence." (Id.) According to him, the information from those reports may have been "shared," but it was not "false." (Id.) Additionally, he asserts that some information in those reports came from other records and court filings and that he is not solely responsible for presenting the false evidence because Paparo signed the reports. (Id.)

19

Theokary, however, does not dispute that portions of the report were plagiarized.  (See id.)  Moreover, he does not dispute his role in creating the expert report by plagiarizing the Damages Section.  (See id.)  Thus, his arguments do not address the facts underlying the Opinion with respect to this factor.

Theokary argues that his testimony does not constitute bad faith because he was under "extreme pressure to produce a damages report."  (Id.)  He cites Bull v. United Parcel Serv., Inc., 665 F.3d 68 (3d Cir. 2012), for the proposition that in light of "circumstances" surrounding his production of the report, his conduct does not demonstrate a "bad faith intent."  (Civ. A. No. 12-2844, Document No. 17, at 24.)

In Bull, the Third Circuit found that a plaintiff's negligent failure to produce records constituted negligence and not bad faith conduct.  Bull, 655 F.3d at 70.  The Court of Appeals reversed the district court's decision to dismiss the case as a sanction for plaintiff's failure to produce originals of certain medical notes that the defendant had requested.  Id.  The Third Circuit stated, "Although a District Court has discretion to draw inferences from the record on a party's intent, it strays beyond the bounds of its discretion, when, as here, there is no factual basis to do so."  Id. at 74.  The defendant had misrepresented to the court that it "hounded [the plaintiff] for the originals over the course of years, but got no response."  Id. at 74.  The Third Circuit explained that the "central problem" was that the trial court accepted these misrepresentations without any critical examination.  Id.  Additionally, the Third Circuit stated that an inference could not be drawn because a factual foundation was lacking.  Id.

In this case, however, the Bankruptcy Court drew an inference that Theokary's acts demonstrated bad faith based on certain facts.  (R. 5, at 32.)  Judge Frank provided a thorough

and detailed analysis of facts supporting his finding that Theokary "was the primary actor responsible for carrying out the attempted fraud upon the court." (Id.) Judge Frank found that Theokary knowingly manufactured and presented false evidence to the Court, as he "knew that Paparo was neither the primary source of the JPS Damages Section nor the author of the 2 Reports." (Id.) Included in his reasoning, Judge Frank pointed to Theokary's great incentive to engage in this deception, Judge Frank's observation of Paparo as seeming reluctant to be involved in this litigation, Paparo's lack of necessary education and skill to carry out the task of preparing the two reports, the fact that it was Theokary who delivered the Redacted Report to his counsel, and finally a damaging admission made by Theokary "in a moment of unintended candor at the Paparo deposition." (Id. at 19-21.)

Theokary has neither shown that the factual basis for the inference made was clearly erroneous, nor demonstrated that the legal analysis that linked the knowing manufacture and presentation of false evidence with bad faith intent was in error. (See Civ. A. No. 12-2844, Doc. No. 17, at 24-25.) Moreover, he fails to identify legal support for the proposition that his circumstances justify his attempt to dupe the Bankruptcy Court. (See id.)

The Bankruptcy Court's decision regarding willfulness and bad faith was not an abuse of discretion. Thus, this factor supports dismissal.

### (b) *Prejudice*

Theokary, citing Bull, 665 F.3d at 80, argues that prejudice does not exist because: (i) the witnesses' memories have not faded; (ii) no excessive or irremediable burdens or costs have arisen; and (iii) defendants have not been impeded in their ability to effectively prepare a trial

strategy.  (Civ. A. 12-2844, Doc. No. 17, at 26.)  The Bankruptcy Court determined that

Theokary prejudiced Shay and Abbatiello by forcing them to invest time and energy to respond to

his conduct.  (R. 5, at 35.)  Moreover, Theokary's conduct prejudiced the public's interest in

maintaining the judiciary's integrity.  (Id. at 35-36.)

Theokary has not shown that either no costs were incurred by Shay or Abbatiello in

bringing this issue to the Bankruptcy Court's attention, or that such costs were not excessive.

(See Civ. A. No. 12-2844, Doc. No. 17, at 26.)  Furthermore, he does not address prejudice to the

"integrity of the legal system and the public interest."  (See id.)  In Bull, the Third Circuit stated,

"Examples of prejudice are 'the irretrievable loss of evidence, the inevitable dimming of

witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the

opposing party.'"  Bull, 665 F.3d at 80 (quoting Scarborough v. Eubanks, 747 F.2d 871, 876 (3d

Cir. 1984)).  The Third Circuit's list of examples of prejudice is not comprehensive.  Therefore,

the Bankruptcy Court's conclusion that the judiciary and the public would be prejudiced as a

result of Theokary's conduct is not foreclosed by Bull.

The Bankruptcy Court found that Theokary's fraud posed prejudice to the integrity of the

legal system and the public interest.  (R. 5, at 35 (citing Derzack v. County of Allegheny, Pa.,

173 F.R.D. 400, 416 (W.D. Pa. 1996).)  The Bankruptcy Court reasoned that:

> Our system is built on rules and procedures.  Litigants who
> bring matters before this court must conduct themselves in an
> appropriate fashion. . . . To impose a less serious sanction [for serious
> misconduct] would send the wrong message . . . Further, there is a
> public interest in discouraging an "anything goes" approach to
> litigation.

(Id. at 35-36 (quoting Perna v. Elec. Sys., Corp., 916 F. Supp. 388, 401 (D.N.J. 1995)) (brackets and first ellipses inserted by Bankruptcy Court).)

Courts have considered the prejudice to the public's interest in protecting the judicial system's integrity from fraud. Wesley v. Scharff, 2011 WL 5878053, *3 (W.D. Pa. Sept. 26, 2011) (unpublished) (explaining that prejudice encompasses impact on judicial system), adopted by, 2011 WL 5881188 (W.D. Pa. Nov. 23, 2011); In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prods. Liab. Litig., 381 F. Supp.2d 421, 425-26 (E.D. Pa. 2005) (Bartle, J.) (finding plaintiff's fabricated prescription threatened public interest in preserving integrity of ongoing litigation and holding dismissal to be the appropriate remedy); Derzack v. County of Allegheny, 173 F.R.D. 400, 414 (W.D. Pa. 1996) (finding that "'prejudice' encompasses not only the prejudice to the litigants but also the impact on the judicial system and the threat to the integrity of the courts which cannot command respect if they cannot maintain a level playing field amongst the participants."). The Bankruptcy Court did not abuse its discretion by concluding that this factor weighs in favor of dismissal because Theokary's actions posed prejudice to the integrity of the legal system and the public interest.

Next, admitting that Shay and Abbatiello "may have incurred" expenses in moving to bar Paparo's testimony and the report, Theokary claims that they had other alternatives, such as moving for Paparo's disqualification at trial; but, they chose to "exploit" the report to dismiss the complaint. (Civ. A. No. 12-2844, Document No. 17, at 26-27.)[11] This argument is without merit

---

[11]In other words, Theokary argues that Defendants could have decided to not file a pretrial motion; instead, they should have proceeded to trial where, during the course of trial, they could have, after researching and formulating an argument, moved for the disqualification of Theokary's expert due to his fraud.

in that had Shay and Abbatiello adopted Theokary's litigation strategy, they would still have been prejudiced. They would have needed to prepare to move for disqualification and simultaneously prepared to rebut Paparo's testimony should the Bankruptcy Court have decided to qualify Paparo as an expert. Additionally, Theokary provides no authority for the proposition that this Court should evaluate Shay and Abbatiello's litigation strategy, with the benefit of hindsight, and discount the prejudice that defendants actually incurred merely because they chose to proceed with a particular appropriate avenue of legal redress over another option. Since the Bankruptcy Court relied on accurate facts and legal conclusions and properly applied the law to those facts, the prejudice factor weighs in favor of dismissal.

### (c) *History of Dilatoriness*

Theokary does not contest the Bankruptcy Court's finding that this factor is "neutral or not particularly applicable." (Civ. A. No. 12-2844, Doc. No. 17, at 27; R. 5, at 36.) The Bankruptcy Court found that both sides "inundated the court with unnecessary or procedurally defective motions" and concluded that it could not place all of the fault on Theokary for the "uncivil and disproportionate manner in which the parties have conducted themselves . . ." (R. 5, at 36.) The Bankruptcy Court's characterization of the facts and its legal analysis are both accurate. Thus, the Court weighs this factor as "neutral or not particularly applicable."

### (d) *Willful or Bad Faith Conduct*

The Bankruptcy Court, citing <u>Derzack</u>, found that Theokary's conduct was both willful and in bad faith:

24

The Derzack court captured perfectly my assessment of the willfulness or bad faith factor. . . :

> It is hard to imagine a more willful act of fraud on the court than the deliberate, elaborate scheme concocted by the plaintiffs to artificially inflate their financial picture and advance their position. . . . It is impossible to imagine how this scheme could not have been conducted in bad faith. This factor indicates dismissal as the appropriate remedy.

(R. 5, at 37 (quoting Derzack, 173 F.R.D. at 416-17).) Theokary attempts to distinguish Derzack on its facts. He asserts the cases are "not analogous" and characterizes the facts underlying the sanctions in this matter as those "in which a plaintiff . . . obtains a signed report from an individual, who . . . lacks the sophistication to serve as an expert . . ." (Civ. A. 12-2844, Document No. 17, at 27.) Theokary's argument is directed to the Bankruptcy Court's application of Derzack to the instant case.[12]

In Derzack, the Court found that the plaintiffs' fraudulent conduct consisting of a scheme to "artificially inflate their financial picture was willful and conducted in bad faith." Derzack, 173 F.R.D. at 416-17. The plaintiffs brought an action against the county asserting claims arising out of the county's alleged conspiracy to prevent the plaintiffs from adopting a child. Id. at 405. The plaintiffs "manufactured evidence" to support a claim and they also stonewalled in a subsequent coverup to conceal their actions by way of one plaintiff's "conspicuously false testimony at his deposition with [the other plaintiff's] willful, albeit passive, cooperation and

_____

[12]Theokary does not argue that the Bankruptcy Court made any clearly erroneous findings of fact with respect to the issue that Theokary committed fraud in his representation that the report was Paparo's work-product when, in fact, the report had been substantially created through plagiarism. (See Civ. A. No. 12-2844, Doc. No. 17, at 27.) Moreover, Theokary cites no evidence that would compel the Court to conclude that the Bankruptcy Court clearly erred in making its findings of fact. (See id.)

participation." Id. at 414-15. The Derzack Court, weighing the Poulis factors, held that the plaintiffs' fraudulent conduct warranted the sanction of dismissal. Id. at 418-19.

Here, Theokary manufactured and presented false evidence to the Bankruptcy Court to support his damages claim (R. 5, at 32), and such conduct is analogous to the actions of the Derzack plaintiffs. Therefore, Judge Frank properly applied Derzack to the facts.

The Bankruptcy Court did not abuse its discretion in concluding that Theokary's action were willful and in bad faith. Thus, the Court weighs this factor in favor of dismissal.

### (e) *Alternative Sanctions*

Theokary asserts that alternative sanctions exist other than dismissal. (Civ. A. No. 12-2844, Doc. No. 17, at 27-28.) He argues that:

> Although the Court below offered justification for dismissal with prejudice by way of Plaintiff's "modest means" (R. 5, at n.25), it is noted that insofar as the applicable Bankruptcy Code section on damages, 11 U.S.C. § 362(k)(1), provides that attorney's fees are part of "actual damages," any costs incurred by Defendants specifically attributable to the disqualified expert could be "set off" against same; merely because Plaintiff dismissed his counsel on the last day of trial should not allow for a different result.

(Id. (citations omitted) (parenthetical added).)[13]

---

[13]In other words, Theokary takes issue with the Bankruptcy Court's assertion that he lacks the means to pay a monetary penalty. (See Document No. 17, at 27-28.) He explains that, as a result of Shay's and Abbatiello's violations of the stay, he is permitted to recover, pursuant to 11 U.S.C. § 362(k)(1), attorney's fees. (See id.) He suggests that instead of Shay and Abbatiello paying the entirety of those fees, they could "set off" the amount that they incurred in moving to disqualify Paparo from the award of attorney's fees. (See id.) Title 11 U.S.C. § 362(k)(1) states:

> Except as provided in paragraph (2), an individual injured by any
> willful violation of a stay provided by this section shall recover
> actual damages, including costs and attorneys' fees, and, in

This argument that an alternative sanction exists is unconvincing. Theokary does not offer any examples of other courts suggesting or, more importantly, imposing such a sanction for similar conduct. (See id.)

He also does not address the issues raised in Judge Frank's opinion. Judge Frank stated that a monetary sanction was problematic because given Theokary's finances such a sanction would not be collectible. (R. 5, at 37.) Additionally, Judge Frank stated that an alternative sanction, such as a monetary or evidentiary sanction, would not "effectively deter," because the Court had already excluded the evidence. (Id.) Moreover, Judge Frank, placing significant weight on Theokary's abuse of the judicial system, stated that "any sanction short of dismissal may be 'inherently inadequate to remedy the harm to the public interest in preserving the integrity of the courts, and in deterring future misconduct on the part of other litigants.'" (Id. (quoting Derzack, 173 F.R.D. at 417).) Theokary fails to provide authority showing that a monetary sanction would adequately deter this type of conduct and preserve judicial integrity. (Civ. A. No. 12-2844, Doc. No. 17, at 27-28.) He also does not explain how awarding monetary damages, albeit a smaller amount, to a plaintiff who commits judicial fraud would discourage such conduct. (See id.) He has not shown that the Bankruptcy Court erred in applying the law to the facts of this case. (See id.) The Bankruptcy Court did not abuse its discretion in finding that this factor weighs in favor of dismissal.

_____

appropriate circumstances, may recover punitive damages.

### (f)  *Meritoriousness of the Claim*

According to Theokary:

> [T]he liability of Defendants Shay and Abbatiello has already been determined and sufficient evidence to warrant recovery shown at the damages trial [sic].  No caselaw has been located which supports the Court's position that so-called "modest economic loss," Bankr. Doc. 386[,] at 39, equates to lack of meritoriousness.

(Document No. 17, at 28.)  Theokary takes issue with Judge Frank's conclusion that the Bankruptcy Court could evaluate the magnitude of a damages recovery, yet he does not dispute the Bankruptcy Court's determination of the potential magnitude of his claim.  (See id.)

In examining the meritoriousness factor, Judge Frank focused on the merits of Theokary's **damages** claim instead of the merits of his causes of action, because, unlike many cases where the sanction of dismissal is considered prior to commencement of trial on the merits, in this case the evidentiary hearing on sanctions was consolidated with the trial on the merits.  (R. 5, at 38.)  In Judge Frank's view, the stableman's  lien that was placed on the horses in excess of their value meant that the amount of recovery was "modest."  (Id. at 39.)  Judge Frank, however, specifically stated that he was **not** evaluating whether such circumstances would preclude Theokary from a damages recovery:

> On these facts, there is no reason to question the merits of [Theokary's] damage[s] claim.  This is not to say that the violation of the automatic stay involving the sale of over-encumbered property in which there was no equity cannot give rise to a damage award under 11 U.S.C. § 362(k).  I do not decide that issue.

(R. 5, at 39.)  The Bankruptcy Court stated that Theokary's "economic loss" was "modest" and even if the "stakes" were greater, Theokary's conduct justified the sanction of dismissal.  (Id.)

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." Poulis, 747 F.2d at 869-70. The Third Circuit has explained that this factor weighs in favor of a plaintiff where a claim would survive a motion to dismiss. See Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008) ("[S]everal of Briscoe's claims survived the summary judgment stage of litigation. . . . *A fortiori*, these claims surpassed the Rule 12(b)(6) motion to dismiss standard, and under the Poulis analysis, his claims are deemed to have merit." (emphasis in original)); Barger v. Walton, 260 Fed. Appx. 476, 478 n.2 (3d Cir. 2008) (finding that meritoriousness factor weighed in plaintiff's favor where claims are "at least facially meritorious," and stating that "standard of meritoriousness when reviewing dismissal is not as rigorous as that required for claims reviewed under summary judgment"); Adams v. Tr. of the N.J. Brewery Empl's' Pension Trust Fd., 29 F.3d 863, 877 (3d Cir. 1994) (finding that the "facial strength" of case caused meritoriousness factor to weigh against dismissal); Scarborough v. Eubanks, 747 F.2d 871, 875 (3d Cir. 1984) ("The meritoriousness of the claim for this purpose must be evaluated on the basis of the facial validity of the pleadings, and not on summary judgment standards.").

Theokary's argument is persuasive because the Third Circuit has not set the contours of this factor to include an analysis of the magnitude of a damages recovery once a plaintiff has shown the existence of a facially meritorious claim. The Bankruptcy Court has determined that Theokary's claim against Shay and Abbatiello was meritorious in that they violated the automatic stay. (R. 3, at 33-34.)

In light of the aforementioned judicial precedent, it cannot be properly concluded that this factor encompasses consideration of the extent of a damages recovery. Therefore, this factor weighs against dismissal.

### (g) *Weighing Factors*

The Third Circuit requires that the <u>Poulis</u> factors "should be weighed by the district courts in order to assure that the 'extreme' sanction of dismissal . . . is reserved for the instances in which it is justly merited." <u>See</u> <u>Poulis</u>, 747 F.2d at 870. The Court finds that the first, second, fourth and fifth factors weigh in favor of imposing dismissal as a sanction. The sixth factor weighs against imposing such a sanction, and the third factor is neutral with respect to the imposition of such a sanction. In sum, the <u>Poulis</u> factors weigh in favor of dismissing Theokary's adversary complaint. Therefore, the Bankruptcy Court did not abuse its discretion in dismissing Theokary's adversary complaint as a sanction. Accordingly, the Bankruptcy Court's April 10, 2012 Opinion dismissing Theokary's adversary proceeding with prejudice pursuant the Court's inherent power due to Theokary's bad faith abuse of the judicial process is affirmed.

### (B) Showplace and Gaitway Appeals

As detailed above, Theokary's Gaitway Appeal asserts that the Bankruptcy Court erred in issuing its November 23, 2009 Order and February 14, 2011 Opinion dismissing Gaitway. (Civ. A. No. 10-0058, Document No. 26, at 9.) Theokary's other appeal, the Showplace Appeal asserts that the Bankruptcy Court erred in its February 14, 2011 Order with respect to the dismissal of Showplace. (Civ. A. No. 11-3556, Doc. No. 4, at 5.)

In the interest of judicial economy, it is unnecessary to address the merits of these arguments. In that the Court affirms the Bankruptcy Court's April 14, 2012 Opinion dismissing Theokary's adversary complaint, Theokary's claims contesting the dismissal of defendants named in said adversary complaint are moot. Therefore, pursuant to Bankruptcy Rule 8013, the Bankruptcy Court's February 14, 2011 Opinion to dismiss Gaitway and Showplace is modified to conform with the finding that the claims against those defendants are moot.

## 6.  CONCLUSION

The Bankruptcy Court's imposition of a sanction was consistent with Theokary's due process and notification rights in that such sanction was raised in Shay and Abbatiello's motion to dismiss and the conduct, upon which they based their motion, was discussed at length during the trial. Moreover, the Bankruptcy Court did not abuse its discretion in sua sponte using its inherent power to impose a sanction of dismissal of Theokary's adversary complaint. Therefore, the Court affirms the Bankruptcy Court's April 10, 2012 Opinion dismissing Theokary's adversary proceeding with prejudice pursuant the Court's inherent power due to Theokary's bad faith abuse of the judicial process. Consequently, Theokary's arguments related to the dismissal of Showplace and Gaitway are moot, and the Bankruptcy Court's February 14, 2011 Opinion is modified accordingly.

An appropriate Order follows.